**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arthur L. Vitasek, | No. CV 10-1777-PHX-RCB (JRI) |
| Plaintiff, | **ORDER** |
| vs. | |
| Maricopa County Sheriff's Office, et al. | |
| Defendants. | |

Plaintiff Arthur L. Vitasek brought this civil rights action under 42 U.S.C. § 1983 against three Maricopa County Sheriff's Office employees: Sheriff Joseph Arpaio; Detention Officer R. Gilbert; and Transportation Officer Deana Lopez (Doc. 12). Before the Court are Gilbert and Lopez's Motion to Dismiss (Doc. 23) and Plaintiff's Motion for Court Orders (Doc. 27).

The Court will deny both motions.

**I.  Background**

Plaintiff's claims arose during his confinement at the Fourth Avenue Jail in Phoenix, Arizona (Doc. 12 at 1). In Count I of his First Amended Complaint, Plaintiff alleged that Arpaio sets the policies applicable in the jails and is responsible for training officers (id. at 3). Plaintiff claimed that the violations alleged in Counts II and III arose due to the policies adopted by Arpaio and his failure to adequately train Gilbert and Lopez (id.).

In Count II, Plaintiff averred that on June 8, 2010, Gilbert opened and read Plaintiff's legal mail and then refused to give the legal mail to Plaintiff (id. at 4). Plaintiff further

averred that Gilbert threatened to read all of Plaintiff's mail in the future. Plaintiff claimed that as a result, he was unable to communicate privately with his witnesses for months until the trial court judge issued an order regarding Plaintiff's mail (id.).

In Count III, Plaintiff alleged that on the morning of March 18, 2010, while he was speaking to a detention officer about transport to court for his hearing later that day, Lopez approached, told Plaintiff to shut up, searched Plaintiff, and asked the detention officer for handcuffs (id. at 5). Plaintiff stated that he informed Lopez he could not carry his box of legal materials while handcuffed, but Lopez responded that this was Plaintiff's problem (id.). Plaintiff alleged that Lopez refused Plaintiff's request for a sergeant and, later, did not return to transport Plaintiff to his hearing. According to Plaintiff, Lopez claimed that Plaintiff refused transport; however, after Plaintiff filed a grievance and a motion with the trial court, Lopez then claimed that Plaintiff had been disruptive. Plaintiff stated that the trial court judge issued an order requiring Plaintiff to be transported in the future (id.).

The Court screened the amended pleading and found that Plaintiff set forth a claim against Arpaio in Count I based upon municipal policy and failure to train, and that Plaintiff stated a First Amendment claim against Gilbert in Count II and an access-to-the-courts claim against Lopez in Count III (Doc. 13).

On December 29, 2010, Arpaio filed a Motion to Dismiss (Doc. 21). Plaintiff submitted a response and a supplemental response to Arpaio's motion (Docs. 24-25). Arpaio then withdrew his motion (Doc. 28). Meanwhile, on January 7, 2011, Gilbert and Lopez filed their Motion to Dismiss (Doc. 23). With his response to Gilbert and Lopez' motion, Plaintiff submitted his Motion for Court Orders (Doc. 27).

**II.    Gilbert and Lopez' Motion**

   **A.    Defendants' Contentions**

Defendants move for dismissal of Counts II and III on the ground that Plaintiff failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) (Doc. 23). In support, they submit the affidavit of Selethia L. Down, a MCSO sergeant assigned to the Inmate Hearing Unit (id., Ex. 2, Down Aff. ¶ 1).

1 Down attests that the inmate grievance procedure at the jail is a three-tiered system that
2 includes (1) the initial grievance and decision by the Bureau Hearing Officer; (2) the
3 Institutional appeal; and (3) the External appeal (id. ¶ 4). Down attests that all inmates are
4 notified of the grievance procedures upon their receipt of the MCSO Rules and Regulations
5 at booking (id.). According to Down, a search of the inmate grievance records maintained
6 by MCSO reflects that plaintiff filed numerous grievances on various issues while housed
7 at the jail facilities (id. ¶¶ 6-7). Attached to the affidavit is a computer generated list of
8 approximately 40 grievances Plaintiff filed during his confinement (id., Ex. D). This list
9 includes the date of each grievance, the grievance number, and a brief description of the
10 complaint, and some entries include a comment describing MCSO's response (id.). Down
11 states that none of Plaintiff's grievances pertain to allegations raised in this lawsuit;
12 specifically, there are no grievances about Gilbert opening and reading Plaintiff's mail and
13 no grievances about Lopez denying Plaintiff transport to court (id. ¶ 8).

14 Defendants rely on this evidence to argue that Plaintiff did not exhaust remedies for
15 his claims in Counts II and III; therefore, the claims raised in those counts should be
16 dismissed with prejudice (Doc. 23 at 4).

### B. Plaintiff's Response

18 As stated, Plaintiff had filed a response and supplemental response to Arpaio's Motion
19 to Dismiss, which was subsequently withdrawn (see Docs. 21, 24-25, 28). Arpaio's motion
20 had also raised a nonexhaustion argument (Doc. 21 at 5). In his response to Gilbert and
21 Lopez' Motion to Dismiss, Plaintiff incorporates his response and supplemental response to
22 Arpaio's motion (Doc. 26 at 1).

23 In his first response Plaintiff avers that previously, on January 14, 2010, his legal mail
24 was seized before he could read it (Doc. 25 at 2). He states that he filed a grievance, which
25 is attached to his response (id., Attach. A). In response to his grievance, Lieutenant
26 Velazquez discussed the issue with Plaintiff and made an agreement that detention officers
27 would not read Plaintiff's legal mail and Plaintiff would not submit a motion on the issue to
28 the trial court (id.). Plaintiff explains that pursuant to this agreement, he signed off on the

- 3 -

1  grievance as resolved (id.). In his response to Gilbert and Lopez' motion, Plaintiff notes that
2  this particular grievance is listed on page four of Defendants' Exhibit D, the computer
3  generated list of Plaintiff's grievances (Doc. 26 at 2, ref. Doc. 23, Ex. D at 4 (describing Jan.
4  15, 2010 grievance regarding legal mail and discussion with Lt. Velazquez)). Plaintiff
5  contends that once his grievance was resolved, the issue was exhausted (Doc. 26 at 2).
6  Plaintiff adds that MCSO has a strict policy against submitting duplicate grievances;
7  therefore, he could not submit another grievance on the same issue (Doc. 25 at 3). Plaintiff
8  argues that with the agreement and resolution of the January 2010 grievance and the
9  prohibition of duplicate grievances, when Defendants subsequently broke that agreement, he
10 had no other remedy available and had exhausted (id.).

11 Plaintiff avers that because a new grievance would have been dismissed as a duplicate,
12 he filed an inmate request form to Sergeant Williams (id.). In this request, Plaintiff cited the
13 rules governing detention officers and the handling of inmate legal mail and the discussion
14 he had with Lt. Velazquez (id.). Plaintiff proffers a copy of this inmate request form, which
15 is dated June 8, 2010 (id., Ex. B). Plaintiff states that there was no response to this request
16 form (id.). Thus, Plaintiff maintains that he had no other remedy so he filed a "Motion for
17 Court Order and Motion for Sanctions" in the state trial court (id., Ex. C). Plaintiff submits
18 a copy of the Minute Entry dated August 2, 2010, which addresses his motion and, according
19 to Plaintiff, provided the relief he sought regarding his legal mail (id., Ex. D). Plaintiff
20 concludes that he exhausted remedies for his legal mail claim and MCSO employees
21 breached the agreement concerning the mail (id. at 4).

22 With his supplemental response, Plaintiff submits a copies of his inmate grievance,
23 Institutional appeal, and External appeal, and all responses thereto, pertaining to his claim
24 against Lopez (Doc. 24, Attach. A). Plaintiff asserts that the transportation issue was not
25 only grieved through every level, it was addressed by Sgt. Downs, who signed the External
26 appeal before returning it to Plaintiff (Doc. 26 at 2, ref. to Doc. 24, Attach. A (External
27 appeal resp. at 5)).

28 Plaintiff submits that the MCSO uses its grievance process as a "revolving conveyor

1 belt that is never resolved," so that lawsuits cannot be filed (Doc. 24 at 6). He alleges that
2 in this system, an inmate grieves an issue, gets a favorable resolution by superiors, but that
3 resolution is then denied or ignored by detention officers (id.). The inmate is told to file a
4 grievance, and the process repeats as long as the grievance is not rejected as a duplicate (id.).
5 Plaintiff states that this circular processing has no end and provides no final resolution (id.).

### C.     Gilbert and Lopez' Reply

7 In light of Plaintiff's evidence of exhaustion as to the claim against Lopez, Defendants
8 withdraw their Motion to Dismiss as to Count III (Doc. 31 at 2).

9 As to the legal-mail claim against Gilbert, Defendants argue that in both his First
10 Amended Complaint and his Response to Gilbert and Lopez' Motion to Dismiss, Plaintiff
11 concedes that he filed no grievance against Gilbert (id. at 1-2). They submit that because
12 there is no evidence that Plaintiff filed a grievance against Gilbert for opening legal mail,
13 Count II must be dismissed (id. at 2).

### D.     Plaintiff's Amended Response

15 Plaintiff filed his first response to Gilbert and Lopez' Motion to Dismiss before the
16 Court issued the Notice required under Wyatt v. Terhune, 315 F.3d 1108, 1120 n. 14 (9th Cir.
17 2003), which informs pro se prisoner litigants of the obligation to respond to motion seeking
18 dismissal for failure to exhaust. Therefore, the Court issued the requisite Notice on January
19 19, 2011, after Gilbert and Lopez' Reply, and provided Plaintiff the opportunity to file an
20 amended response (Doc. 33).

21 In his Amended Response, Plaintiff restates that he filed a grievance in January 2010
22 about officers reading his legal mail, he reached agreement with Lt. Velazquez and resolved
23 the grievance, and then in June 2010 Gilbert violated that agreement and read Plaintiff's mail
24 (Doc. 37 at 1-2). Plaintiff argues that the MCSO grievance policy requires inmates to file
25 grievances to attempt to resolve *issues* and that he grieved the issue of officers reading his
26 legal mail (id. at 2-3). He maintains that the language in the policy does not require him to
27 grieve each individual detention officer who violates the previous agreement made pursuant
28 to his initial grievance resolution (id. at 3). Plaintiff submits that the issue was properly

- 5 -

1 grieved and resolved, thereby ending the grievance process (id. at 3-4). He notes that nothing in the MCSO grievance policy explains what an inmate must do if MCSO does not adhere to the proposed resolution (id. at 4-5).

### E. Gilbert and Lopez' Amended Reply

Gilbert and Lopez repeat that there is no evidence that Plaintiff filed a grievance against Gilbert (Doc. 38 at 2). Defendants contend that Plaintiff is wrong to conclude that the filing of an inmate request form to Sgt. Williams excused or waived his obligation to exhaustion administrative remedies (id.). They state that the inmate request form is not a grievance and does not supersede the exhaustion requirement (id. at 3). They also state that the case law is clear that exhaustion is mandatory (id. at 2). Defendants refer to the MCSO grievance policy, which provides that grievance forms must be submitted within 48 hours of the event being grieved (id. at 3, citing Doc. 23, Ex. 1). Defendants argue that because Plaintiff failed to comply with the PLRA and the MCSO grievance policy, this claim must be dismissed (Doc. 38 at 3).

## IV. Exhaustion

### A. Legal Standard

Under the PLRA, a prisoner must exhaust available administrative remedies before bringing a federal action. See 42 U.S.C. § 1997e(a); Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009). Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001). A prisoner must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 548 U.S. 81, 92 (2006).

Exhaustion is an affirmative defense. Jones v. Bock, 549 U.S. 199, 212 (2007). Thus, the defendant bears the burden of raising and proving the absence of exhaustion. Wyatt, 315 F.3d at 1119. Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. Id. at 1119-20. Further, a court has broad discretion as to the method to be used in resolving the factual

1 dispute. Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th
2 Cir. 1988) (quotation omitted). If a court finds that the plaintiff failed to exhaust
3 administrative remedies, the proper remedy is dismissal without prejudice. Wyatt, 315 F.3d
4 at 1120. Dismissal of the entire complaint is not required if a plaintiff exhausts some, but not
5 all, claims included in the complaint. See Jones, 549 U.S. at 222-24.

**B.     Analysis**

7 The request for dismissal only applies to Plaintiff's claim in Count II. The specific
8 exhaustion question raised is whether Plaintiff's January 15, 2010 grievance, which
9 concerned officers opening and reading his legal mail, served to exhaust Plaintiff's claim
10 against Gilbert that arose in June 2010. Plaintiff submits a copy of the January 2010
11 grievance (Doc. 25, Attach. A), and Defendants describe this grievance in their grievance list
12 attached to Down's affidavit (Doc. 23, Ex. 2, Down Aff. ¶ 7, Ex. D at 4). This evidence
13 reflects that in his January 2010 grievance, Plaintiff complained about his legal mail being
14 opened and seized, that Lt. Velazquez met with Plaintiff and "discussed legal issues and
15 [Plaintiff's] mail," and that Plaintiff's grievance was resolved (id.). With this resolution,
16 Plaintiff exhausted his January 2010 grievance about detention officers' handling of his legal
17 mail. See Harvey v. Jordan, 605 F.3d 681, 685 (9th Cir. 2010) ("[a]n inmate has no
18 obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to
19 exhaust his administrative remedies").

20 Because the burden is on Defendants to demonstrate nonexhaustion, Gilbert must
21 show that when the legal mail issue arose again in June 2010, relief remained available to
22 Plaintiff through the grievance system. See Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir.
23 2005). The information concerning MCSO's grievance policy "is pertinent because it
24 informs our determination of whether relief was, as a practical matter, 'available.'" Id. at
25 937. Plaintiff asserts that there is no provision within MCSO policy that informed him how
26 to proceed after his grievance was resolved but the issue recurred with Gilbert's actions.
27 Gilbert does not respond to this assertion or point to any provision within the policy that
28 instructed Plaintiff what he could have done. Nor does Gilbert respond to Plaintiff's

1 contention that he was required only to grieve the *issue* about which he complained, rather
2 that grieve each individual officer upon his or her involvement with that issue.  Instead,
3 Gilbert merely repeats that Plaintiff failed to file a grievance against Gilbert within 48 hours
4 of the incident being grieved (Doc. 38 at 2-3).

5 Plaintiff is correct that he does not have to name individual defendants in an inmate
6 grievance; he is only required to put jail officials on notice of a problem.  Griffin, 557 F.3d
7 at 1120.  His January 2010 grievance clearly put jail officials on notice of the problem with
8 detention officers opening and reading his legal mail (Doc. 25, Attach. A).  And, again, the
9 evidence shows that MCSO addressed the problem and Plaintiff obtained the relief he
10 desired.  Gilbert's claim that Plaintiff should have re-grieved the legal mail issue in June
11 2010 when Gilbert opened Plaintiff's legal mail is contradicted by Ninth Circuit case law.
12 In Harvey, the Court rejected prison officials' arguments that when an inmate is granted
13 relief in the administrative process but it is not actually provided, the inmate must pursue
14 additional administrative remedies.  Harvey, 605 F.3d at 685 (citing Abney v. McGinnis, 380
15 F.3d 663, 669 (2d Cir. 2004) ("[a] prisoner who has not received promised relief is not
16 required to file a new grievance where doing so may result in a never-ending cycle of
17 exhaustion")).  Indeed, Plaintiff specifically contends that Defendants' position—that
18 Plaintiff had to grieve Gilbert individually—denotes a system with a "kind of circular
19 processing" where an inmate files a grievance and it is resolved favorably, and then the
20 resolution is ignored and the inmate is told to file another grievance (Doc. 24 at 6).  See
21 Woodford, 548 U.S. at 102-03 (emphasizing that in holding that proper exhaustion is
22 required, the Court was not addressing those situations where an inmate contends that
23 officials devised procedural requirements for the purpose of tripping up inmates as they try
24 to navigate the grievance system).  Defendants, again, fail to respond to Plaintiff's
25 contention.

26 In sum, given the evidence of Plaintiff's January 2010 exhausted grievance on the
27 relevant issue and the applicable case law, Defendants have failed to meet their burden to

28

establish nonexhaustion of the claim in Count II against Gilbert.  The Motion to Dismiss will therefore be denied.

**III.    Motion for Court Orders**

    **A.    Parties' Contentions**

        **1. Plaintiff's Motion**

Plaintiff moves for the Court to (1) direct MCSO to preserve evidence related to his claims, (2) order MCSO to show cause why it should not be held in contempt for destroying evidence (of Plaintiff's exhausted grievance), (3) prohibit MCSO from submitting computer generated evidence given its unreliability, (4) order MCSO to investigate and report why evidence was deleted from their computer system, (5) issue a search warrant to have MCSO's computer searched by an expert, (6) prohibit MCSO detention officers from searching Plaintiff's property without his presence, and (7) sanction MCSO for destruction of evidence (Doc. 27 at 3-4[1]).

        **2. Defendants' Response**

Arpaio asserts that there is no systemic problem affecting the institutional grievance monitoring system and the documents pertaining to Plaintiff's grievance on the transportation issue were simply not included with the copies of Plaintiff's grievances that were first provided to defense counsel (Doc. 30 at 1-2).  For these reasons, Arpaio requests that the Court deny Plaintiff's Motion for Sanctions (id. at 2).

Gilbert and Lopez respond that the information regarding this one grievance was overlooked at the time that the list of grievance materials was provided to defense counsel (Doc. 32 at 1-2).  They submit that the system, being maintained by humans, is not infallible and there is no reason to order sanctions or the other relief Plaintiff requested in his motion (id. at 2).  Gilbert and Lopez also assert that they are not personally responsible for maintaining the grievance records so there is no basis for sanctioning them (id.).  Finally,

---

[1] Plaintiff's Motion for Court Orders is part of Plaintiff's first response to Gilbert and Lopez' Motion to Dismiss (Doc. 26 at 3-4).  For clarity, the Court has docketed the response filing separately as a Motion at Document 27.

they argue that Plaintiff has not made the necessary factual or legal showings to obtain the requested relief (id.).

### 3. Plaintiff's Reply

In reply, Plaintiff points out that while Lopez claims no responsibility or liability for the MCSO computer records that omitted reference to the exhausted grievance about transport, she came to Plaintiff and discussed the grievance and then signed the grievance herself (Doc. 36 at 1-2). Plaintiff states that is not rational for the defense to blame the error on MCSO's computer when Lopez had personal knowledge of the grievance (id. at 2). Plaintiff suggests that this situation is an example of the systemic problems at MCSO, with the primarily problem being responsibility—the sheriff claims he is not responsible for his employees or for his computer system, the employees are not responsible for jail procedures, and now defense counsel is not responsible for submitting unreliable evidence (id. at 2-3). Plaintiff requests that, in light of Defendants' tampering with evidence, his motion for relief and sanctions be granted (id. at 3).

### B.   Analysis

Plaintiff's motion makes requests for injunctive relief and raises discovery issues. To warrant injunctive relief, Plaintiff must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 374 (2008); Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009). Plaintiff does not address these four factors, and he presents no specific facts or evidence to demonstrate that Defendants or other jail officials have performed or will perform unlawful searches of his property. Nor does Plaintiff demonstrate that he is likely to suffer irreparable harm as a result of conduct he speculates Defendants may attempt during litigation.

As to discovery matters, the Federal Rules of Civil Procedure outline the parties' obligations in discovery and provide Plaintiff with the tools to seek specific evidence or information. See Fed. R. Civ. P. 26-34. The Rules also allow for Plaintiff to move for

an order compelling disclosure and for appropriate sanctions. See Fed. R. Civ. P. 37. Defendants are already subject to a duty to make proper representations to the Court, Fed. R. Civ. P. 11(b), and to preserve evidence. See State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc., 425 F.3d 708, 720 (9th Cir. 2005) (a party to litigation bears a general obligation to preserve evidence).

For the above reasons, Plaintiff's motion will be denied.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Gilbert and Lopez' Motion to Dismiss (Doc. 23) and Plaintiff's Motion for Court Orders (Doc. 27).

(2) Gilbert and Lopez' Motion to Dismiss (Doc. 23) is **denied**.

(3) Plaintiff's Motion for Court Orders (Doc. 27) is **denied**.

DATED this 31st day of March, 2011.

_____
Robert C. Broomfield
Senior United States District Judge