**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Arthur L. Vitasek, | ) | No. CV 10-1777-PHX-RCB (JRI) |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Maricopa County Sheriff's Office, et al. | ) | |
| Defendants. | ) | |

Plaintiff Arthur L. Vitasek brought this civil rights action pro se under 42 U.S.C. § 1983 against three Maricopa County Sheriff's Office employees: Sheriff Joseph Arpaio; Detention Officer R. Gilbert; and Transportation Officer Deana Lopez (Doc. 12). Plaintiff is now represented by counsel (Doc. 54). Before the Court are Defendants' Motion for Summary Judgment (Doc. 64) and Motion for Ruling (Doc. 70). Plaintiff filed an untimely response in opposition to Defendants' summary judgment motion in which he requests that his response be considered as timely filed (Doc. 71).

The Court will deny Defendants' Motion for Ruling, deny Plaintiff's request to consider his late filing, grant Defendants' summary judgment motion, and terminate the action.

**I.    Background**

Plaintiff's claims arose during his confinement at the Fourth Avenue Jail in Phoenix, Arizona (Doc. 12 at 1). In Count I of his First Amended Complaint, Plaintiff alleged that

Arpaio sets the policies applicable in the jails and is responsible for training officers (id. at 3). Plaintiff claimed that the violations alleged in Counts II and III arose due to the policies adopted by Arpaio and his failure to adequately train Gilbert and Lopez (id.).

In Count II, Plaintiff averred that on June 8, 2010, Gilbert opened and read Plaintiff's legal mail and then refused to give the legal mail to Plaintiff (id. at 4). Plaintiff further averred that Gilbert threatened to read all of Plaintiff's mail in the future. Plaintiff claimed that as a result, he was unable to communicate privately with his witnesses for months until the trial court judge issued an order regarding Plaintiff's mail (id.).

In Count III, Plaintiff alleged that on the morning of March 18, 2010, while he was speaking to a detention officer about transport to court for his hearing later that day, Lopez approached, told Plaintiff to shut up, searched Plaintiff, and asked the detention officer for handcuffs (id. at 5). Plaintiff stated that he informed Lopez he could not carry his box of legal materials while handcuffed but Lopez responded that this was Plaintiff's problem (id.). Plaintiff alleged that Lopez refused Plaintiff's request for a sergeant and, later, did not return to transport Plaintiff to his hearing. According to Plaintiff, Lopez claimed that Plaintiff refused transport; however, after Plaintiff filed a grievance and a motion with the trial court, Lopez then claimed that Plaintiff had been disruptive. Plaintiff stated that the trial court judge issued an order requiring Plaintiff to be transported in the future (id.).

The Court found that Plaintiff set forth a claim against Arpaio in Count I based upon municipal policy and failure to train and that Plaintiff stated a First Amendment claim against Gilbert in Count II and an access-to-the-courts claim against Lopez in Count III (Doc. 13).

Defendants now move for summary judgment on the grounds that (1) Plaintiff cannot show that Maricopa County Sheriff's Office (MCSO) policies or training procedures are constitutionally inadequate, (2) Gilbert did not violate Plaintiff's First Amendment rights when he handled Plaintiff's mail, and (3) Lopez did not violate Plaintiff's right of access to the courts when she refused to transport him to court (Doc. 64). In support of their motion, Defendants submit a separate Statement of Facts (DSOF), which is supported by various affidavits and documents (Doc. 65, Exs. A-T).

1    As stated, Plaintiff did not file a timely response to Defendants' motion. Therefore, Defendants filed a Motion for Summary Disposition requesting that the Court deem Plaintiff's failure to respond as a consent to the granting of their summary judgment motion and summarily grant the motion (Doc. 70).

Plaintiff then filed a response in opposition to summary judgment, which is supported by Plaintiff's affidavit (Doc. 71, Attach.). Within the response, Plaintiff requests that the Court consider the response as if timely filed (id. at 2).

In a combined Reply and Motion to Strike, Defendants move to strike the response as untimely and argue that all of DSOF are admitted because Plaintiff did not comply with the Local Rules that require a nonmovant to submit a corresponding statement of facts (Doc. 73 at 3-5).

**II.  Procedural Matters**

   **A.  Defendants' Motion for Ruling**

As the movant on summary judgment, Defendants bear the initial burden to demonstrate there are no disputed material facts. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Consequently, even absent a response, it would be improper to summarily grant summary judgment without first determining whether the movant met that burden. See Marshall v. Gates, 44 F.3d 722, 725 (9th Cir. 1995) (summary judgment may not be granted simply because opposing party violated a local rule, if movant did not meet the burden of demonstrating absence of genuine issue for trial). The Court will therefore deny Defendants' request to summarily grant the summary judgment motion.

   **B.  Plaintiff's Request that Court Consider Untimely Response**

After Defendants' filed their summary judgment motion, the Court issued an Order setting a response deadline of October 3, 2011 (Doc. 66). Plaintiff filed his response memorandum on November 14, 2011 (Doc. 70). Within his response, Plaintiff requests that the Court consider his filing as timely given that the delay was caused by Plaintiff's lengthy criminal trial, for which he had the same counsel now representing him in this action (Doc. 71 at 2).

1       Because Plaintiff seeks an extension to an expired filing deadline, the applicable standard is excusable neglect. Fed. R. Civ. P. 6(b)(1)(B) (when an act must be done within a specified time, the court may extend the time "on motion made after the time has expired if the party failed to act because of excusable neglect"). Plaintiff did not file a separate motion seeking an extension. <u>See</u> <u>id.</u>; LRCiv 7.3. Moreover, he fails to address any of the factors to be considered in an excusable neglect determination. <u>See</u> <u>Pioneer Inv. Servs. Co. v. Brunswick Ass'n Ltd. P'ship</u>, 507 U.S. 380, 395 (1993) (excusable neglect determination takes into account (1) the danger of prejudice to the other party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, and (4) whether the party acted in good faith). Plaintiff's sole reason for the delay in filing a response is that he had a long criminal trial; yet, he does not explain why he was unable to move for an extension prior to the deadline expiring. A busy caseload is not a compelling justification for finding excusable neglect. <u>See</u> <u>id.</u> at 398. Nor does inadvertence or carelessness generally constitute excusable neglect. <u>See</u> <u>Kyle v. Campbell Soup Co.</u>, 28 F.3d 928, 931 (9th Cir. 1994).

      The Court finds that Plaintiff has not demonstrated excusable neglect and, thus, his response is untimely and will not be considered.

### C. Defendants' Motion to Strike Plaintiff's Response

      Because the Court will not consider Plaintiff's response, Defendants' motion to strike, which is within their reply brief, will be denied as moot.

## III. Summary Judgment Legal Standard

      A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see also</u> <u>Celotex</u>, 477 U.S. at 322-23. As stated, the movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323.

      If the movant meets its initial responsibility, the burden then shifts to the nonmovant

to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 250 (1986) ; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation omitted); see Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence, and draw all inferences in the nonmovant's favor. Id. at 255.

Because Plaintiff's claim in Count I—that Arpaio's training policies were deficient and led to the alleged violations in Counts II and III—rests on the Court finding a triable issue of fact as to one of the two other Counts, the Court will first address the claims against Gilbert and Lopez.

### IV. Count II-First Amendment Claim Against Gilbert

#### A. Legal Standard

Inmates have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995). But a prison may limit an inmate's constitutional rights if the restrictions are reasonably related to legitimate penological interest. Turner v. Safely, 482 U.S. 78, 89 (1987). Officials may inspect nonlegal mail for contraband without violating an inmate's constitutional rights. See Smith v. Boyd, 945 F.2d 1041, 1043 (9th Cir. 1991). Prisons may also institute procedures for inspecting legal mail; however, it must be treated more cautiously than other correspondence. Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974) (upholding constitutionality of regulations that allow prison officials to open an

inmate's legal mail in his presence for visual inspection for contraband). "Federal regulations require, and several courts have held, that the regular opening of legal mail must be done in the inmate's presence." Kalka v. Megathlin, 10 F. Supp. 2d 1117, 1123 (D. Ariz. 1998) (citing federal regulations and cases).

### B. Facts/Arguments

In their Separate Statement of Facts (DSOF), Defendants set forth the following factual assertions:

On June 8, 2010, Gilbert received two letters addressed to Plaintiff (Doc. 65, DSOF ¶ 7). With the letters was a note from the mail room directing that the letters be opened in Plaintiff's presence to determine if they were "legal mail" (id. ¶ 8). Gilbert opened the letters in front of Plaintiff; both letters were from Plaintiff's mother, Ruby Vitasek (id. ¶ 11). Gilbert took the letters to his Supervisor, who instructed Gilbert to return them to Plaintiff but inform Plaintiff that any future letters from his mother marked "legal mail" would be returned to her (id. ¶¶ 13-14).

Defendants submit a copy of the MCSO Mail Policy, which requires any incoming mail, except legal mail, to be in postcard form (Doc. 65, Ex. F at 2). The Inmate Mail Policy defines "legal" or "privileged mail" as mail from inmates' attorneys or "the press, courts, court staff, or other court officials (including probation officer), officials of the confining authority, or administrators of the grievance system" (id., Ex. F at 1). Under MCSO policies, privileged mail may be opened and inspected for contraband, but this must be done in the presence of the inmate (id., Ex. G at 1). Defendants also proffer a transcript excerpt of proceedings in criminal court in which the court addressed Plaintiff's motion about Gilbert's handling of these letters (id., Ex. J). The trial judge found that the letters from Plaintiff's mother were not privileged, but that when reading mail from his mother or any other non-privileged mail, the MCSO must adhere to its policies that limit review of inmate mail to jail intelligence investigators or supervisors (id., Ex. J (Doc. 65-10 at 16)[1]).

---

[1] Citation refers to the Court's Case Management/Electronic Case Filing system.

1   Defendants argue that even though Ruby Vitasek was on Plaintiff's witness list in his criminal case, letters from her did not constitute legal mail (Doc. 64 at 7). They contend that Gilbert complied with MCSO mail policies; he opened the letters to inspect them for contraband and maintain jail security and that his actions did not violate Plaintiff's constitutional rights (id. at 6, 8).

As mentioned, the Court will not consider Plaintiff's response. However, it will consider his First Amended Complaint. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (allegations contained in a pro se plaintiff's verified pleadings must be considered as evidence in opposition of summary judgment); McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (a verified complaint may be used as an opposing affidavit under Rule 56).[2]

Plaintiff's allegations against Gilbert are set forth above. There are few material disputes between Plaintiff's allegations and Defendants' factual assertions, except Plaintiff avers that Gilbert made comments that "he could do whatever he wanted" and "he was going to read all [Plaintiff's] mail from now on" (Doc. 12 at 4). Plaintiff also asserts that the criminal trial judge informed him that to obtain monetary relief for Gilbert's allegedly unlawful conduct, he would have to file a § 1983 claim (id.).

**C.    Analysis**

The initial question to be addressed is whether the two letters from Plaintiff's mother constituted legal mail. As Defendants assert, the trial court judge determined that the letters were not privileged mail (Doc. 65, Ex. J (Doc. 65-10 at 16)). Also, although the MCSO's mail policy has a broad definition of what constitutes legal mail—including letters from the press, the courts, and law enforcement—the letters do not constitute legal mail under that policy (see Doc. 65, Ex. F at 1). The Ninth Circuit has defined legal mail much narrower; it is limited to correspondence between an inmate and his attorney. See Wolff, 418 U.S. at 575-76; Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996).

---

[2]Although Plaintiff is now represented by counsel, when he filed his amended pleading, he was proceeding pro se (Doc. 12).

Here, there is no evidence or assertion that Ruby Vitasek is a licensed attorney. That she was listed as a witness in Plaintiff's criminal case does not give their correspondence the same protection afforded to "legal mail" within the meaning of the First Amendment. See Lavine v. Clarke, 2009 WL 1794484, at *1, 4 (W.D. Wash. 2009) (inmate's wife was not a legal source even where they were acting pro se together in a case; thus, mail from wife was not legal mail).

In short, the letters at issue were not legal mail, and because jail officials may examine incoming mail without infringing upon an inmate's rights, Gilbert's actions do not amount to a constitutional violation. Summary judgment in Defendants' favor is therefore appropriate on Count II.

## V. Count III-Access to Courts Claim Against Lopez

### A. Legal Standard

An inmate has a constitutionally protected right of meaningful access to the courts. Bounds v. Smith, 430 U.S. 817, 820-21 (1977). There are two types of access-to-court claims: those concerning a prisoner's right to affirmative assistance and those, like the instant action, concerning a prisoner's right to litigate without active interference. Silva v. Di Vittorio, 658 F.3d 1090, 1102 (9th Cir. 2011). The right against active interference "forbids states from 'erect[ing] barriers that impede the right of access of incarcerated persons.'" Id. at 1102-03 (internal citations omitted).

Whether an access-to-courts claim is based on the right to affirmative assistance or the right to litigate without active interference, the prisoner must allege (1) that a nonfrivolous legal attack on his conviction, sentence, or conditions of confinement has been impeded; and (2) that he has suffered an actual injury as a result. Lewis v. Casey 518 U.S. 343, 353-55 (1996). An actual injury is defined as "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Id. at 348.

### B. Facts/Arguments

Defendants argue that there was a specific, articulable safety concern that justified

Lopez's refusal to transport Plaintiff to court for his hearing in March 2010 (Doc. 64 at 9-10). They submit Lopez's affidavit, in which she avers that she made the decision not to transport Plaintiff to Court on March 18, 2010, because he was disruptive, argumentative, and combative, and she determined that it was unsafe to transport him that day (Doc. 65, Ex. L, Lopez Aff. ¶¶ 3-4, 7-8).

Defendants further argue that Plaintiff suffered no actual injury as a result of Lopez's decision not to transport Plaintiff to court that day (Doc. 64 at 10). They proffer a copy of Plaintiff's criminal court docket to show that the hearing scheduled for March 18, 2010, was re-scheduled for April 16, 2010; thus, the delay was just one month (id., DSOF ¶ 55, Ex. S (Superior Court Case No. CR2005-030514)). They also note that the criminal court docket reflects that Plaintiff filed numerous motions, including two motions to continue trial and a motion to stay trial (id.). They argue that based on his own filings in the criminal proceedings, the short delay caused by the rescheduled March 18, 2010 hearing did not result in any damages or injury sufficient to support an access-to-courts claim (Doc. 64 at 12).[3]

In his First Amended Complaint, Plaintiff alleged that he complied with Lopez's orders and submitted to a search; yet, she was cross with him, she told him to shut up, she placed him in handcuffs, and then told him she would come back later to transport him "if I decide to come back at all" (Doc. 12 at 5). Plaintiff states that she never returned and effectively refused transport (id.). According to Plaintiff, he immediately grieved the issue, and Lopez claimed that Plaintiff refused transport, but later claimed that Plaintiff was

---

[3]Defendants also argue res judicata on the ground that this claim was adjudicated in the trial court proceedings (Doc. 64 at 12-13). They point to a transcript from those proceedings wherein the trial judge stated that he did not find that the failure to transport Plaintiff to court on a single occasion would constitute a significant impact on the litigation (Doc. 65, Ex. N, Hr'g Tr. 2:22-25, April 21, 2010). But the trial judge also stated that if Plaintiff alleges the deprivation of a constitutional right, the remedy lies in a federal § 1983 action, and the judge admonished the prosecutor that going to court is pursuant to a Court order that cannot be disregarded as punishment because of a prisoner's attitude, short of a show of force by the prisoner (id., Hr'g Tr. 3:3-6, 3:9-15). The Court finds that this brief discussion does not amount to an adjudication or a final order on the merits of Plaintiff's access-to-the-court claim.

disruptive so she decided not to transport him (id.). He alleged that her actions led to a continuance in his criminal trial and he was forced to spend more time in jail (id.).

### C. Analysis

The record shows that when Plaintiff failed to appear in court after Lopez's refusal to transport him, the hearing was rescheduled the following month. There is no evidence that Plaintiff was left unable to present an argument or comply with a court deadline. Thus, there is no evidence that Plaintiff was prejudiced by the short delay. See Lewis, 518 U.S. at 348 (inmate must demonstrate that his case or claim has been frustrated or impeded). Plaintiff's claim that the delay led to a longer jail detention does not support a finding of actual injury. Indeed, the delay was just a few weeks, and the trial court docket shows that Plaintiff repeatedly sought to delay his trial and thereby extend his jail detention.

Taking Plaintiff's allegations as true, Lopez's conduct may have been unwarranted and even unprofessional; however, because Plaintiff fails to show that he suffered an actual injury as a result of her interference, he cannot support an access-to-court claim. Summary judgment will be granted to Defendants on Count III.

## VI. Count I-Failure to Train/Policy Claim Against Arpaio

### A. Legal Standard

Plaintiff's allegations in Count I allege liability against Arpaio in his official capacity (Doc. 12 at 1). When an individual is sued in his official capacity, the real party in interest is the entity of which the officer is an agent. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 690 n. 55 (1978)). In this case, that entity is Maricopa County.

With respect to an official-capacity claim, a defendant is liable if a policy causes a violation of an individual's federal rights. Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991); see Monell, 436 U.S. at 690-95. In addition, an entity or municipality's "failure to train an employee who has caused a constitutional violation can be the basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the employee comes into contact." Long v. County of Los Angeles, 442

F.3d 1178, 1186 (9th Cir. 2006) (citing Canton v. Harris, 489 U.S. 378, 388 (1989)).

**B.  Analysis**

The Court has found that neither Gilbert nor Lopez violated Plaintiff's constitutional rights and that summary judgment is warranted on Counts II and III. It follows that there can be no liability based on a policy or for Arpaio's failure to train that resulted in a constitutional violation. See Blankenhorn v. City of Orange, 485 F.3d 463, 484 (9th Cir. 2007) (to show a failure to train, a plaintiff must first show that he was deprived of a constitutional right); Long, 442 F.3d at 1186 (to impose liability based on a policy, a plaintiff must first show that an employee violated his constitutional rights). Accordingly, summary judgment will be granted to Defendants on Count I.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion for Summary Judgment (Doc. 64) and Motion for Ruling (Doc. 70).

(2) Defendants' Motion for Ruling (Doc. 70) is **denied**.

(3) Plaintiff's request to consider response as timely filed (within Doc. 71) is **denied**.

(4) Defendants' Motion to Strike (within Doc. 73) is **denied**.

(5) Defendants' Motion for Summary Judgment (Doc. 64) is **granted**.

(6) The Clerk of Court must enter judgment accordingly and terminate the action.

DATED this 23rd day of January, 2012.

Robert C. Broomfield
Senior United States District Judge